**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JERRY ODOM**                                                                              **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 1:25-cv-00139-BWR**

**BRAND HUFFMAN, et al.**                                                        **DEFENDANTS**

<u>**ORDER GRANTING MOTIONS [19] [21] FOR SUMMARY JUDGMENT
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**</u>

*Pro se* Plaintiff Jerry Odom is an inmate housed in the custody of the Mississippi Department of Corrections ("MDOC") at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.  Compl. [1] at 2.  His claims arise under 42 U.S.C. § 1983, and he names Brand Huffman and Vital Core Health Strategies as Defendants.  *Id.* at 2, 5.  Plaintiff is proceeding *in forma pauperis*, Order [5], and his allegations were clarified at an Omnibus Hearing on December 4, 2025.[1]

On November 13, 2025, Defendants filed Motions [19] [21] for Summary Judgment for Failure to Exhaust Administrative Remedies.  Plaintiff filed a written Response [32] on December 19, 2025, and Vital Core replied [34].  The Court finds that Defendants' Motions [19] [21] for Summary Judgment for Failure to Exhaust Administrative Remedies should be granted, that Plaintiff's claims against them should be dismissed with prejudice, and that this case should be closed.

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

## I. BACKGROUND

### A. Plaintiff's Allegations

In November 2023, Plaintiff was using the mixer in the kitchen at SMCI, when his right hand got caught in the mechanism. Compl. [1] at 7. Plaintiff claims that the "safety device [was] removed" from the mixer at the time of the incident. *Id.*

After the incident, Plaintiff was taken to the hospital in Greene County, where he learned that three of his fingers were broken. Compl. [1] at 3. He was "given a shot for the pain and released back to SMCI." *Id.* A few hours later, Plaintiff was taken to Baptist Hospital in Jackson, where doctors sewed "part of [his] middle finger back on." *Id.* He was then returned to SMCI and placed in general population. *Id.* Plaintiff testified that his middle finger "turned black" over the next several days.

Plaintiff returned to Baptist Hospital about 20 days later "because of the pain and smell coming from" his injuries. Compl. [1] at 3. Plaintiff was hospitalized for two days, during which time he received antibiotics and had another "surgery to have the rotten flesh removed from [his] fingers." *Id.* He was again returned to SMCI. *Id.*

Twenty-five days later, Plaintiff returned to Baptist Hospital for treatment of "a 'hotspot' or a nerve sticking out." Compl. [1] at 3. Plaintiff had complained of pain at SMCI, but it was largely disregarded as "phantom pains." *Id.* He had been given nothing but 800-milligram ibuprofen tablets to treat his discomfort. *Id.*

A few weeks later, Plaintiff returned to Baptist Hospital for his third surgery, during which doctors "burn[ed]" the nerve. Compl. [1] at 3 (quotation omitted).

Plaintiff complains that this surgery "mangled [his] finger and made [the] pain worse." *Id.* He was taken back to SMCI the same day. *Id.*

At a follow-up visit, a doctor at Baptist Hospital agreed that Plaintiff's last surgery had worsened his condition. Compl. [1] at 4. That doctor suggested removing part of Plaintiff's middle finger, which was done in June 2024. *Id.* After the surgery, Plaintiff was returned to SMCI and felt unsafe living in general population because he could not "defend [him]self." *Id.* Plaintiff's stitches were removed about three weeks after the surgery. *Id.*

Over the next seven to eight months, Plaintiff dealt with more pain that his providers at SMCI called "phantom pains." *Id.* Plaintiff testified that he received "all types of different medications," but none effectively treated his symptoms. Eventually, his pain was treated with a fifth surgery, during which doctors "removed more of the knuckle and burnt more nerves." *Id.*

Finally, in April 2025, Plaintiff "went back into surgery to have the rest of [his] finger removed, [only] to wake up and still have [his] finger there." Compl. [1] at 4. Rather than removing the finger as planned, doctors simply "shaved [his] finger bone and tried to revive the dead nerves in the finger." *Id.* At the Omnibus Hearing, Plaintiff testified that he was still in pain. He is "still waiting on another surgery to be booked which will be [surgery] number seven." *Id.*

Plaintiff wants the Mississippi Department of Corrections to bear all medical and legal fees that he has incurred because of this incident. Compl. [1] at 7. Specifically, he seeks $3.5 million from MDOC "for improper equipment and unsafe

3

working environment." *Id*. He also seeks $5,000.00 per day from the time of his injury until his hand is "correctly fixed." *Id*. And he wants $100,000.00 for each surgery and "[r]elease from prison with no parole or probation."[2] *Id*.

### B. Defendants' Summary Judgment Evidence

Defendants submitted as evidence the affidavit of Joseph Cooley, who serves as "custodian of the Administrative Remedy Program" at SMCI. Mot. [19-5] at 1. He testified that Plaintiff has submitted four grievances to the ARP, numbered (1) SMCI-25-0140, (2) SMCI-24-0547, (3) SMCI-24-0231, and (4) SMCI-23-1738. *Id*.

Chronologically, the first of these grievances was submitted on September 18, 2023. Mot. [19-1] at 3. Plaintiff appealed a rule violation report accusing him of "refusing or failing to carry out a work assignment." *Id*. (quotation omitted). That grievance was accepted into the ARP on October 4, 2023, *id*. at 1, and Plaintiff's appeal was "granted" on November 22, 2023, *id*. at 7.

Plaintiff's second grievance was submitted on January 28, 2024. Mot. [19-2] at 3. Plaintiff complained that he had "been working for the last 3 years in the kitchen and . . . ha[d] not receive[d] any pay." *Id*. That grievance was accepted into the ARP on January 31, 2024, *id*. at 1, and Plaintiff was advised by first-step response on February 15, 2024, that he did not in fact "work at the dining hall," *id*. at 6.

---

[2] Plaintiff's request for immediate release from custody is properly the subject of a petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Plaintiff's habeas claim was severed from his request for monetary damages under § 1983, Order [26], and the habeas claim is now being heard in Civil Action No. 1:25-cv-00366-TBM-LGI (S.D. Miss. Dec. 4, 2025).

Plaintiff filed a follow-up response on March 16, 2024, insisting that he started working in the dining hall in November 2021.  *Id.* at 4.

Plaintiff's third grievance was filed on March 16, 2024, asking to be "moved" to a different correctional facility.  Mot. [19-3] at 3.  That grievance was accepted into the ARP on March 22, 2024, *id.* at 1, and he was advised by first-step response on April 15, 2024, that he did not "qualify" for the requested transfer "due to a facility restriction," *id.* at 5.

Plaintiff's final grievance was filed on January 11, 2025.  Mot. [19-4] at 3.  It reads like this:

> I have been putting sick call after sick call in about my finger that got cut off while I was working in Area I [dining] hall they cut my finge[r] off and after they say it was healed it's not it still got never hang out this is the reason they cut it off the first time I need something done.

*Id.*  That grievance was accepted into the ARP on January 17, 2025, *id.* at 1, and Plaintiff was advised by first-step response on February 4, 2025, as follows:

> You saw Medical Provider Woodland NP on 1/27/25.  She has ordered for you to go to see an orthopedic doctor about your finger.  We send your referral to the orthopedic office and we wait until they call us with your appointment date [and] time.  Hopefully that won't be to[o] long.

*Id.* at 4.  No second-step grievance on this issue is included in the record.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Westfall v.*

*Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and alterations omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id.* (quotation omitted).

6

## III. DISCUSSION

### A. Legal Framework

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84.

"Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison*

*Cnty. Adult Det. Ctr.,* No. 1:18-cv-00087-RHW, 2020 WL 980149, at \*1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* "This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process." *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015). "Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process." *Id.* "Thus, it is only if the prison fails to respond at the *last* step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance." *Id.* (emphasis in original).

A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at \*1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some

8

relief for the action complained of." *Id*. (quotation and brackets omitted). An administrative grievance procedure is unavailable where: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

"Exceptions to the exhaustion requirement only apply in extraordinary circumstances, and the prisoner bears the burden of demonstrating the . . . unavailability of administrative review." *Badger v. Fisher*, No. 5:16-cv-00107-MTP, 2017 WL 5906045, at *2 (S.D. Miss. Nov. 30, 2017) (quotation omitted). "Courts may consider unexhausted claims where grievance procedures are not available to an inmate, [but] courts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *White v. Pickett*, No. 3:21-cv-00180-KHJ-MTP, 2023 WL 1788566, at *3 (S.D. Miss. Jan. 17, 2023) (quotation omitted; emphasis in original), *report and recommendation adopted by*, 2023 WL 1787171, at *2 (S.D. Miss. Feb. 6, 2023).

### B. Analysis

The contours of the ARP are "detailed in Chapter VIII of [MDOC's] Inmate Handbook." *VanSlyke v. Taylor*, No. 5:22-cv-00013-DCB-LGI, 2023 WL 4042663, at *3 (S.D. Miss. May 16, 2023), *report and recommendation adopted by*, 2023 WL

9

4042584, at *1 (S.D. Miss. June 15, 2023).  The Court may take "judicial notice of the Inmate Handbook posted on MDOC's website."[3]  *See id.* (citing *Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022)).  "MDOC employs a two-step ARP process through which an inmate may present grievances relating to his incarceration."  *Id.*  To use the ARP:

> An inmate must file a grievance within 30 days of the complained-of incident. . . . The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. . . . If the inmate disagrees with the step-two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018).

It is undisputed that Plaintiff filed an initial grievance about the medical care he received (or did not receive) for his injured fingers.  Mot. [19-4] at 3.  But this record contains no evidence that Plaintiff filed a second-step grievance to fully exhaust his administrative remedies about these claims before filing this lawsuit. Thus, Defendants have carried their initial summary-judgment burden of proving their entitlement to judgment as a matter of law based on Plaintiff's failure to exhaust administrative remedies.  *See Lane v. Doe*, 399 F. App'x 964, 965 (5th Cir. 2010).

Plaintiff argues that he never received the first-step response to his administrative grievance.  Resp. [32] at 2.  He notes that he did not sign the first-step response form, *see* Resp. [32-1] at 2, proving his lack of notice.  As a result, Plaintiff claims that he "could not appeal or respond to it."  Resp. [32] at 2 ("An inmate cannot appeal or exhaust a remedy he does not know exists.").  He asserts: "Any failure to

---

[3] Mississippi Department of Corrections, *Inmate Handbook*, available at https://www.mdoc.ms.gov/inmates (last visited July 24, 2026).

complete the ARP process in this case is attributable solely to Defendants' administrative failures, not to Plaintiff." *Id.* at 3 (emphasis omitted).

Assuming Plaintiff never received notice of the first-step response, his argument nonetheless fails because he was still obligated to complete the two-step administrative-grievance procedure. "[T]he failure of prison officials to respond to a grievance does not constitute a valid excuse for failure to exhaust administrative remedies." *Corring v. Epps*, No. 2:13-cv-00029-KS-MTP, 2013 WL 6199581, at *4 (S.D. Miss. Nov. 27, 2013) (quotation omitted). "If Plaintiff did not receive a timely step-one response, he [was still] required to pursue his step-two remedy prior to filing a civil action." *Evans v. Cain*, No. 3:23-cv-00223-LGI, 2024 WL 6077905, at *7 (S.D. Miss. Oct. 24, 2024); *see also Douglas v. Cain*, No. 3:23-cv-00538-MTP, 2025 WL 1911776, at *4 (S.D. Miss. Jan. 27, 2025) ("[I]f no First Step Response is forthcoming, the prisoner must then proceed to the Second Step."); *Murshid v. King*, No. 3:20-cv-00129-RPM, 2022 WL 4102782, at *3 (S.D. Miss. Aug. 22, 2022) ("If [the plaintiff] did not receive a first-step response to any . . . grievances, [his] remedy would not be to file a federal lawsuit" but to "proceed to the second step of the grievance process.").

Thus, "MDOC policy provides authority for inmates who do not receive timely ARP responses to pursue their appeals." *Corring*, 2013 WL 6199581, at *4. The Inmate Handbook specifically provides:

> Unless an extension has been granted, no more than 90 days shall elapse from beginning the process to ending the process. Absent such an extension, expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process.

11

Inmate Handbook, Chapter VIII, p. 17.  In other words, once Plaintiff realized that he did not receive a response to his initial grievance, he should have submitted a second-step grievance before filing this lawsuit.  He admits that he did not.

And Plaintiff has not met his "burden of demonstrating the . . . unavailability of administrative review."  *See Badger*, 2017 WL 5906045, at *2.  He does not allege that his custodians were unwilling to provide relief or that the ARP is prohibitively confusing.  At most, he claims that he did not understand his obligation to proceed to the second step—regardless of whether he received the first-step response.  But all evidence suggests that Plaintiff "had a fair, reasonable opportunity to apprise himself" of the applicable procedural rules.  *See White*, 2023 WL 1788566, at *3.  He was obligated to follow them.

Because exhaustion of administrative remedies is mandatory, but was not achieved in this case, Plaintiff's claims against all Defendants must be dismissed.  "[F]ailure to exhaust administrative remedies usually results in a dismissal without prejudice, . . . [but] when exhaustion is no longer possible, dismissal may be with prejudice."  *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007).  Again, MDOC's ARP requires that administrative remedies be exhausted within 90 days of beginning the grievance process, and Plaintiff's first-step grievance was filed more than eighteen months ago.  Thus, timely and proper "exhaustion has become impossible" in this case.  *Carson v. Cnty. of Warren, MS*, No. 3:21-cv-00593-KHJ-MTP, 2024 WL 4205591, at *2 (S.D. Miss. Sept. 16, 2024) (dismissing claims with prejudice where "the deadlines . . . to file administrative grievances ha[d] long

12

since passed"). Pursuant to Vital Core's request, Mem. [20] at 7, Plaintiff's claims will be dismissed with prejudice.

## IV. CONCLUSION

The Court has considered all arguments presented. Any argument not specifically addressed would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [19] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Vital Core Health Strategies and the Motion [21] for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Brand Huffman are **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Jerry Odom's claims against both Defendants are **DISMISSED WITH PREJUDICE**. A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 29th day of July, 2026.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

13